**SO ORDERED.**

**SIGNED August 19, 2011.**



_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE
_____

```
            UNITED STATES BANKRUPTCY COURT
             WESTERN DISTRICT OF LOUISIANA

IN RE:

JEFFREY J. BERTRAND, SR. and              CASE NO. 10-50008
KAREN T. BERTRAND,

     Debtors                              Chapter 11

------------------------------------------------------------

LOUISIANA MARINE TOWING, LLC,

     Plaintiff

VERSUS                                    ADVERSARY NO. 10-05032

JEFFREY J. BERTRAND,

     Defendant

------------------------------------------------------------
                       MEMORANDUM RULING
------------------------------------------------------------
```

The plaintiff in this adversary proceeding, Louisiana Marine Towing, LLC ("Louisiana Marine"), seeks a determination that the debts allegedly owed by the debtor, Jeffrey J. Bertrand, are non-

dischargeable under 11 U.S.C. §§ 523(a)(2) and 523(a)(4). The court took the case under submission following a trial on the merits. As explained further below, the court grants Louisiana Marine relief in part under 11 U.S.C. §523(a)(2). In all other respects, the relief requested by Louisiana Marine is denied.

**JURISDICTION**

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J). The following Memorandum Ruling shall constitute the court's findings of fact and conclusions of law.

**BACKGROUND**

In 2008, Louisiana Marine entered into an agreement with a company owned and operated by Bertrand, Inspection Construction Unlimited ("ICU"), for the construction of a tug boat known as the *M/V Lady Lauren*. Louisiana Marine made multiple progress payments to ICU for the *Lady Lauren* totaling $1.1 million. The last two progress payments of $165,000 and $110,000 were made on January 28, 2009, and March 30, 2009, respectively. According to Louisiana Marine, the last two progress payments were made only after Bertrand personally represented that all of ICU's vendors and subcontractors for the *Lady Lauren* had been paid. Louisiana Marine

-2-

contends that, despite these representations, subcontractors and vendors who purportedly provided labor and materials in the construction of the *Lady Lauren* filed liens for amounts that ICU did not pay totaling $138,984.40.

In addition to the *Lady Lauren*, in 2008, Louisiana Marine and ICU had preliminary discussions about the construction of a second tug boat that was to be called the *M/V Miss Cricket*. Although the parties never entered into a formal contract with respect to the *Miss Cricket*, Louisiana Marine agreed to pay ICU $200,000 as a deposit to purchase steel for the construction of the *Miss Cricket*. According to Louisiana Marine, Bertrand and ICU used less than half of the $200,000 steel deposit to purchase steel. Instead, Louisiana Marine contends that Bertrand and ICU used the remaining amounts for unauthorized expenditures.

## DISCUSSION

A creditor has the burden of proof in an action to determine the dischargeability of a debt under section 523(a). Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." Hudson v. Raggio & Raggio, Inc. (In re Hudson), 107 F.3d 355, 356 (5th Cir. 1997).

-3-

Accordingly, a creditor must establish each and every element of a statutory exception to discharge under 11 U.S.C. § 523 et seq. by a preponderance of the evidence. The elements of a nondischargeability claim are a matter of federal law.

**A.    Nondischargeability Under 11 U.S.C. § 523(a)(2)(A)– Fraud.**

Section 523(a)(2)(A) provides that "money, property, services, or an extension, renewal, or refinancing of credit" that is obtained through "false pretenses, a false representation, or actual fraud" is subject to exception from a debtor's discharge. 11 U.S.C. § 523(a)(2)(A). In order for a debt to fall within section 523(a)(2)(A), the debtor's fraud or false representation must involve the debtor's "moral turpitude or intentional wrong." Vizzini v. Vizzini ( In re Vizzini), 348 B.R. 339, 343 (Bankr. E.D. La. 2005), aff'd, 234 Fed. Appx. 234 (5th Cir. 2007) (quoting In re Chavez, 140 B.R. 413, 419 (Bankr. W.D. Tex. 1992)). The Fifth Circuit has "distinguished between actual fraud on the one hand and false pretenses and misrepresentations on the other" in describing the elements required for a nondischargeability action under section 523(a)(2)(A). RecoverEdge L.P. v. Pentecost, 44 F. 3d 1284, 1292 (5th Cir. 1995); In re Holdaway, 388 B.R. 1767, 772 (Bankr. S.D. Tex. 2008). "False pretenses" under section 523(a)(2)(A) requires a "knowing and fraudulent falsehood that describes past or current facts and is relied upon by the other

-4-

party.  See RecoverEdge, 44 F. 3rd at 1292.  In other words, "a promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise subsequently is breached."  In re Allison, 960 F. 2d 481, 484 (5th Cir. 1982).  To establish actual fraud, the plaintiff must prove that: (1) the debtor made false representations; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intent to deceive plaintiffs; (4) the plaintiff relied on these misrepresentations; and (5) the plaintiff's injury was sustained as a proximate result of the representations made by debtors.  In re Bercier, 934 F.2d 689, 692 (5th Cir. 1991); RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995).

   1.   **Progress Payments on the *Lady Lauren***

Louisiana Marine contends that it made the last two progress payments on the *Lady Lauren* (totaling $275,000) based on Bertrand's representation that ICU had paid the subcontractors and vendors who had provided labor and materials in connection with the construction of the vessel.  According to Louisiana Marine, this representation was false and, as a result, some subcontractors and vendors have asserted claims and liens of approximately $138,984 for services and labor provided in connection with the construction of the *Lady Lauren.*  Louisiana Marine asserts that, but for

-5-

Bertrand's false representations, it would not have paid the full amount of the last two progress payments for the *Lady Lauren*, but would have applied those payments to the $138,984 of outstanding liens and claims. Louisiana Marine claims $138,984 of damages as a result of Bertrand's actions.

After reviewing the record, the court agrees that any damages suffered by Louisiana Marine as a result of vendor liens or claims against the *Lady Lauren* are nondischargeable under section 523(a)(2)(A). Based on the testimony of Robert Adams (the president of Louisiana Marine) and Bertrand, the court finds that Bertrand assured Adams and Louisiana Marine that all of the subcontractors and vendors for the *Lady Lauren* had been paid, and that Bertrand made these assurances prior to Louisiana Marine making the last two progress payments on January 28, 2009 and March 30, 2009. Louisiana Marine then made these payments in reliance on Bertrand's representations. Moreover, based on his testimony at trial, Bertrand knew that some vendors and subcontractors had not been paid for labor and materials supplied in the construction of the *Lady Lauren* when he made his contrary representations to Louisiana Marine. In sum, Bertrand knew that his representations to Louisiana Marine were false when made, and that his representations would induce Louisiana Marine to make the final progress payments on the *Lady Lauren*. This evidence is

sufficient to establish that Bertrand possessed the requisite fraudulent intent to support a nondischargeability claim under section 523(a)(4)(A).

Bertrand's argument that Louisiana Marine's contract for the *Lady Lauren* was with ICU and that the progress payments were made to ICU, not Bertrand, is not a defense to nondischargeability under section 523(a)(4)(A). Bertrand's own conduct and statement independently satisfy the elements of fraud under section 523(a)(2)(A). See In re Adams, 312 B.R. 576, 587 (Bankr. M.D.N.C. 2004) ("It is well settled that a corporate officer or agent may be personally liable for damages caused to third parties by his fraud or false representations even though he is acting on behalf of his employer when the fraud or false representations occur."); In re Carman, 2010 W.L. 1416518 at *2 (Bankr. D.Md. 2010) (observing that "when a corporate officer personally commits fraud, even though acting in the name of the corporation, that officer can be held personally liable for the ensuing damages."). Nor does the fact that the progress payments were made to ICU insulate Bertrand from liability. A debtor need not directly benefit from his fraudulent conduct to satisfy the requirements of section 523(a)(2)(A). See In Brady, 101 F. 3d 1165 (6th Cir. 1996); In re Bilzerian, 100 F. 3d 886 (11th Cir. 1996); In re Ashley, 903 F. 2d 599 (9th Cir. 1990). In sum, Louisiana Marine is entitled to relief under

-7-

section 523(a)(2)(A) with respect to Bertrand's misrepresentations concerning the payment of subcontractors and vendors who supplied materials and services in the construction of the *Lady Lauren*.

**2. Steel Deposit for the *Miss Cricket***

Louisiana Marine also contends that the $200,000 paid to ICU as a down payment for the purchase of steel for the *Miss Cricket* is nondischargeable under section 523(a)(2)(A). According to Louisiana Marine, Bertrand agreed that the $200,000 would be used solely for purchasing steel. Louisiana Marine contends that Bertrand and ICU purchased less than $100,000 of steel and used the remainder of the down payment for unauthorized expenditures. Considering the record as a whole, Louisiana Marine has not met its burden of proof that Bertrand committed fraud with respect to the $200,000 steel deposit. Even if ICU and Bertrand did not comply with the parties' agreement as to the use of the deposit, their breach of the parties' agreement does not, standing alone, amount to fraud. See In re Sasse, 438 B.R. 631, 648 (Bankr. W.D.Wisc. 2010) ("Even an intentional breach of contract is not fraud under § 523(a)(2), and a promise about future acts, without more, likewise does not constitute a misrepresentation."); In re Hill, 425 B.R. 766, 775 (Bankr. W.D.N.C. 2010) (explaining that "a breach of contract, even an intentional breach, is not a fraud as contemplated by § 523(a)(2)(A).") (citing Strum v. Exxon Co., 15 F.

-8-

3d 327, 331 (4th Cir. 1994)); In re Allison, 960 F. 2d 481, 484 (5th Cir. 1992) (holding that a "promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise subsequently is breached.") In order to establish fraud, Louisiana Marine must prove that **Bertrand** made promises to Louisiana Marine and that he had no intention of performing those promises when he made the promises. Allison, 960 F. 2d at 484. Although Louisiana Marine suggests that some of the steel deposit was used for Bertrand's personal expenses, the record does not show that the funds were used for Bertrand's personal use, or that Bertrand made any promises to Louisiana Marine that he had no intent to perform at the time the promises were made. The fact that the deposit was not used in its entirety to purchase steel, standing alone, does not support a finding that Bertrand had no intention of performing this agreement with Louisiana Marine. Accordingly, Louisiana Marine has not met its burden of proof that the $200,000 deposit is nondischargeable under section 523(a)(2)(A).

**B.  Nondischargeability Under 11 U.S.C § 523(a)(4) – Fraud or Defalcation by a Fiduciary, Larceny, and Embezzlement**.

The Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4). This exception "was intended to

-9-

reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." <u>Miller v. J.D. Abrams Inc. (In re Miller)</u>, 156 F.3d 598, 602 (5th Cir. 1998) (quoting <u>In re Boyle</u>, 819 F.2d 583, 588 (5th Cir. 1987)). Fraud for purposes of section 523(a)(4) includes the same elements as fraud under section 523(a)(2)(A). A "defalcation" is a willful neglect of duty, and a willful neglect of duty by a person owing a fiduciary duty is evaluated by a "recklessness standard." <u>See</u> <u>Office of Thrift Supervision v. Felt (In re Felt)</u>, 255 F.3d 220, 226 (5th Cir. 2001). The definitions of embezzlement and larceny under section 523(a)(4) are matters of federal law. Embezzlement for purposes of section 523(a)(4) is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." <u>In re Miller</u>, 156 F.3d at 602; <u>Smith v. Hayden (In re Hayden)</u>, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000); <u>RAI Credit Corp. v. Patton ( In re Patton)</u>, 129 B.R. 113, 116 (Bankr. W.D. Tex. 1991). Embezzlement requires a showing that: "(1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor did the appropriation with fraudulent intent." <u>Hayden</u>, 248 B.R. at 525. Larceny is "the

-10-

fraudulent and wrongful taking away of the property of another with the intent to convert it to the taker's use and with intent to permanently deprive that owner of such property." Id. at 526 (citations and emphasis omitted).

   1.  **Progress Payments on the *Lady Lauren***

In order to establish nondischargeability under the fiduciary fraud or defalcation prong of section 523(a)(4), Louisiana Marine must establish the presence of a "fiduciary relationship" between itself and Bertrand. Not all fiduciary relationships under state law fall within section 523(a)(4). The type of relationship required to trigger liability for fraud or defalcation under section 523(a)(4) is determined by federal law. A fiduciary under section 523(a)(4) is narrowly defined, applying only to technical or express trusts. In re Bennett, 989 F.2d 779, 784 (5th Cir. 1993)(citing In re Angelle, 610 F.2d 1335 (5th Cir.1980)); see also In re Tran, 151 F.3d 339, 342 (5th Cir. 1998); In re Schwager, 121 F.3d 177, 186 (5th Cir. 1997). The requisite trust relationship must exist prior to the act creating the debt and without reference to that act. In re Bennett, 989 F.2d at 784; see also In re Tran, 151 F.3d at 342 (trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong). "In other words, the trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing. The debtor

-11-

must have been a trustee before the wrong and without any reference to it." In re Bennett, 989 F.2d at 784 (citation omitted). Therefore, constructive trusts or trusts *ex malificio* are insufficient to create a fiduciary relationship within the meaning of section 523(a)(4). While federal law governs the scope of the fiduciary relationships that fall within the ambit of section 523(a)(4), courts look to state law in determining whether the "trust-type obligations" cited in Bennett exist. The record does not support the existence of a fiduciary relationship between Louisiana Marine and Bertrand, much less the express trust relationship required by Bennett and Tran. See, e.g., Emery v. Heyl, 80 So.2d 95 (1954) (observing that "[t]he mere reposing of confidence in a person with whom one has a commercial transaction" does not result in the creation of a fiduciary relationship). Accordingly, the fiduciary fraud or defalcation prong of section 523(a)(4)does not apply to the *Lady Lauren* progress payments.

Louisiana Marine also has not met its burden proving that its losses from the final two progress payments and the vendor liens and claims satisfy the larceny and embezzlement prongs of section 523(a)(4). While the court has found that Bertrand made fraudulent representations with respect to the payment of subcontractors and vendors, the record does not show that Bertrand acted with the intent to convert Louisiana Marine's money or property to his

-12-

personal use with the "intent to permanently deprive [Louisiana Marine] of such property." <u>Hayden</u>, 248 B.R. at 526. Nor does the record establish each of the elements of embezzlement. Specifically, Louisiana Marine has not met its burden of proof that Bertrand appropriated its property for his own use or benefit. <u>Id.</u> at 525. In sum, the *Lady Lauren* progress payments are not excluded from Bertrand's discharge pursuant to section 523(a)(4).

**2.   Steel Deposit for the *Miss Cricket***

As in the case of the progress payments for the *Lady Lauren*, the record does support the existence of the express trust with respect to the steel deposit for the *Miss Cricket*. Nor does the record support nondischargeability with respect to the larceny and embezzlement prongs of section 523(a)(4). Specifically, the record does not establish that Bertrand obtained money or property from Louisiana Marine fraudulently or wrongfully with respect to the $200,000 steel deposit. As explained previously with respect to Louisiana Marine's section 523(a)(2)(A) claim, the mere fact that Bertrand and ICU breached their agreement with Louisiana Marine does not support an inference that Bertrand wrongfully or fraudulently appropriated any of the $200,000 for his personal benefit. <u>See</u> <u>Hayden</u>, 248 B.R. at 526. Nor does the record show that Bertrand subsequently diverted any of the deposit for his personal use. <u>See</u> <u>In re Hofmann</u>, 144 B.R 459 (Bankr. D.N.D. 1992),

-13-

aff'd, 5 F. 3d 1170 (8th Cir. 1993) (noting that embezzlement cannot be established merely by showing that property is missing because missing property could be the result of the debtor's failure to comply with his contract and not embezzlement); see also In re Rose, 934 F. 2d 901 (7th Cir. 1991). Accordingly, Louisiana Marine has not met its burden of establishing nondischargeability under section 523(a)(4) with respect to the $200,000 steel deposit.

**C.  Amount Excluded From Discharge.**

Louisiana Marine's damages that are excluded from discharge under section 523(a)(2)(A) are the losses that Louisiana Marine suffered as a result of having to pay the liens and claims asserted against the *Lady Lauren* up to the $275,000 of progress payments made by Louisiana Marine in reliance on Bertrand's misrepresentations. The court, however, cannot enter a judgment at this stage in favor of Louisiana Marine because there is no evidence in the record showing that Louisiana Marine has incurred a loss with respect to any liens or claims. Accordingly, the court will enter findings with respect to nondischargeability under section 523(a)(2)(A), and keep the record open with respect to the amount of damages. The court will schedule a status conference with the parties to set deadlines for additional submissions on damages, as well as scheduling a future evidentiary hearing if necessary to liquidate damages and enter a judgment.

-14-

## CONCLUSION

For the foregoing reasons, the court **FINDS** that the amounts paid by Louisiana Marine on account of claims and liens filed against the *Lady Lauren* are nondischargeable under 11 U.S.C § 523(a)(2)(A). The court further sets a telephonic status conference for **9:00 a.m. on September 23, 2011**, to set deadlines for additional submissions and, if necessary, to set an evidentiary hearing on liquidating the amount of damages subject to the court's nondischargeability finding. The court will initiate the telephone conference. In all other respects, the relief requested by Louisiana Marine in its complaint is **DENIED**.

###

-15-

10-05032 - #31  File 08/19/11  Enter 08/19/11 13:55:04  Main Document  Pg 15 of 15